UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
OCT 28 2009
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | |
|---|---|
| PROGRAM MANAGEMENT INTERNATIONAL, | § § § |
| Plaintiff, | § § |
| v. | § § CIVIL CASE NO. SA09CA0877 OG |
| TETRA TECH EC, INC., | § § § |
| Defendant. | § |

## ORIGINAL COMPLAINT

COMES NOW PLAINTIFF Program Management International ("PMI") and files its Original Complaint complaining of Tetra Tech EC, Inc. ("Tetra"), and would respectfully show the Court as follows:

### I. PARTIES

1. PMI is a foreign company formed and existing under the laws of the Republic of Iraq.

2. Defendant Tetra is a Delaware corporation with its principal place of business in California. Tetra does business in Bexar County, Texas and also did business in Bexar County, Texas at the time this action accrued. Tetra may be served with process through its registered agent CT Corporation System at 350 North St. Paul St., Dallas, TX 75201 USA.

### II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) or "alienage jurisdiction." The parties are diverse and the amount in controversy has a value, exclusive of interest and costs, exceeding the sum of $75,000.00.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) and 28 U.S.C. § 1391(a)(2) because the Defendant maintains an office in Bexar County, Texas, and Bexar County, Texas, is where a substantial part of the events giving rise to the claim occurred.

### III. STATEMENT OF FACTS

5.     This case arises out of a construction contract in post-war Iraq. During the 1970s Iraq made extensive investment in the water sector and other infrastructure using the proceeds of oil revenue. This investment slowed during the Iran-Iraq War of 1980 to 1988, but left Iraq in 1990 with a relatively modern electrical, water supply and sewerage system. During the Gulf War of 1991 aerial bombardment caused severe damage to the electric grid that operated the pumping stations and other facilities for potable water delivery and sewage treatment. The sanctions imposed by the United Nations at the conclusion of the Gulf War exacerbated these problems by banning the importation of spare parts for equipment and chemicals, such as chlorine, needed for disinfection.

6.     As a result of the war and sanctions, delivery of water dropped precipitously. Estimates indicate that before 1991, 95% of urban dwellers and 75% of rural dwellers were served by modern water supply systems that delivered treated water to homes and businesses. By 1999, urban coverage had dropped to 92% and rural coverage to 46%. Individual water availability showed greater changes. Between 1990 and 2000, the daily per capita share of potable water went from 330 litres to 150 litres in Baghdad, 270 to 110 in other urban areas, and 180 to 65 in rural areas.

7.     The March 2003 invasion of Iraq produced further degradation of Iraq's water supply, sewerage and electrical supply systems. Treatment plants, pumping stations and generating stations were stripped of their equipment, supplies and electrical wiring by looters.

The once-capable cadre of engineers and operating technicians were scattered or left the country. Reconstruction efforts faced a nation with a severely degraded infrastructure.

8. Funding of reconstruction efforts began with the creation of the Iraq Relief and Reconstruction ("IRRF") in April 2003. The IRRF is administered and funded by the United States. An initial allocation of $2.5 billion was made for immediate food, medicine and water relief.

9. The United States Program Manager for Iraqi Reconstruction ("AFCEE") is in charge of managing reconstruction. To that end, it contracted with Tetra to design and build an army base for the Iraqi National Army in Khan Bahgdadi Al Anbar Province ("Khan Bahgdadi), outside of the safety and security of the Green Zone, and commonly referred to in Iraq as "outside the wire."

10. In turn, Tetra subcontracted with Arish Babil ("ABC") to supply life support, build barracks, offices, roads and perimeter along with site grading. Tetra subcontracted with Al Farees for water and sewage systems based upon PMI's design, research and bid assembly. Tetra subcontracted with Karel Electric ("Karel") to supply power grid, power generation and ancillary systems. Karel also was a subcontractor to ABC for installing building electric to supply heavy equipment to ABC.

11. PMI performed services for Al Farees/ABC (as the owner of Al Farees is 50% owner of ABC) after it was provided the subcontract with Tetra, including, but not limited to design, construction, supplying material and labor and management. In addition, ABC provided heavy equipment that was leased from Karel, some material and labor for Al Farees.

12. In or around June 2008, PMI and ABC had a dispute regarding water and sewage facility construction work for Tetra that originally was to be supplied by ABC. Tetra was unhappy about the progress of the facility by ABC and sought other contractors, none of which

PLAINTIFF'S ORIGINAL COMPLAINT -- Page 3

would agree to work in such a dangerous area outside the wire except PMI. Therefore, at the request of Tetra, PMI took over ABC's subcontract work.

13. Because of difficulties with ABC and the water sewage facility construction, including but not limited to lack of payment, PMI advised Tetra that is was going to pull out its supplied pump stations, lift stations, supplies and laborers. Tetra's Program Manager for the Khan Bahgdadi construction and the Program Manager, Project Manager, and Construction Manager repeatedly advised PMI that it was needed to complete the water and sewage project and that they would "make it right," "to lean forward - get it done," and "we've got your back." In reliance on these representations, to this end, PMI expended in excess of $540,000 in construction costs, including, but not limited to labor, equipment, travel, security, and back office support. To date, PMI has not been paid despite many attempts to negotiate a mutually acceptable solution.

## IV. CAUSES OF ACTION

### A. Breach of Contract

14. In 2007, PMI entered into a valid and enforceable contract with Tetra to provide construction services in Iraq. PMI has performed its obligations under the contract rendering the negotiated services. Payment by Tetra is due and owing to PMI. Tetra has breached said contract by failing to pay PMI for services rendered.

15. PMI has occurred damages as result of Tetra's breach of contract for which it now seeks recovery.

### B. Quantum Meruit

16. In the alternative to its breach of contract claim, PMI seeks recovery under the doctrine of quantum meruit. PMI provided valuable construction services to Tetra with the expectation that it would be compensated. Tetra willingly accepted these services with notice of

PMI's expectation of payment. However, Tetra has refused to compensate PMI for the rendered services.

17. As a result, PMI has sustained damages for which it now seeks recovery.

## V. CONDITIONS PRECEDENT

18. All conditions precedent to Plaintiff's claims have been performed or have occurred.

## VI. ATTORNEYS' FEES

19. In order to prosecute its claim for breach of contract it has become necessary for PMI to employ the undersigned attorneys. Defendant is liable to PMI for reasonable attorneys' fees pursuant to the contract and Section 38.001, TEXAS CIVIL PRACTICES & REMEDIES CODE.

## VII. PRAYER

20. PMI requests that the Court, after notice and hearing or trial, enter judgment in favor of PMI, award PMI damages within the jurisdictional limitations of this Court, prejudgment and post-judgment interest at the highest legal rate, costs of court, attorneys' fees, and such other and further relief, general or special, at law or in equity, to which it may be justly entitled.

Respectfully submitted,

ZIMMERMAN, AXELRAD,
MEYER, STERN & WISE, P.C.

By: _____
Anne Marie Finch
Texas State Bar No. 06997625
3040 Post Oak Blvd., Suite 1300
Houston, Texas 77056
(713) 552-1234
(713) 963-0859 (fax)
afinch@zimmerlaw.com

ATTORNEY-IN-CHARGE FOR PLAINTIFF

**OF COUNSEL:**

Michael A. Harvey
ZIMMERMAN, AXELRAD,
MEYER, STERN & WISE, P.C.
Texas State Bar No. 24058352
3040 Post Oak Blvd., Suite 1300
Houston, Texas 77056
(713) 552-1234
(713) 963-0859 (fax)